UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 18-21036-CV-WILLIAMS/TORRES

ELADIO RUIZ, individually,

    Plaintiff/Counter-Defendant,

v.

SAFECO INSURANCE COMPANY OF ILLINOIS, a foreign entity,

    Defendant/Counter-Plaintiff.
_____/

**ELADIO RUIZ'S RESPONSE IN OPPOSITION TO SAFECO INSURANCE COMPANY OF ILLINOIS' *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, ROY T. BENT, JR.**

Plaintiff/Counter-Defendant, ELADIO RUIZ ("Ruiz"), hereby files and serves his response in opposition to Defendant/Counter-Plaintiff, SAFECO INSURANCE COMPANY OF ILLINOIS' ("Safeco"), *Daubert* Motion to Exclude Testimony of Plaintiff's Expert Witness, Roy T. Bent, Jr. [D.E. 81], and in opposition states as follows:

**BACKGROUND**

On February 18, 2018, Ruiz filed this action against Safeco seeking insurance proceeds in connection with a loss sustained to his recreational vehicle ("RV"). Specifically, Ruiz unknowingly purchased a stolen RV, which he later insured with Safeco. On August 15, 2017, while the subject RV insurance policy ("Policy") was in full force and effect, the RV was permanently seized by the Federal Bureau of Investigation ("FBI"). Ruiz was permanently deprived of the RV as a result of the seizure.

The comprehensive section of the Policy provides that Mr. Ruiz is entitled to actual cash

value. (DE 40-3, 89:11–13) ("So at the time of loss, what would be paid would be the actual cash value at the time of loss."); also (DE 40-1, at 15). Accordingly, Ruiz has retained the services of Mr. Roy T. Bent ("Bent") to provide expert testimony as to the actual cash value of the luxury RV on the date of loss. Mr. Bent has opined that the actual cash value of the RV on the date of loss was $519,702.00[1]. (D.E. 81-2). Safeco's motion seeks to exclude Mr. Bent as an expert by claiming that (i) Mr. Bent's method of valuation "does not meet the reliability standard for expert testimony," and (ii) his testimony will not assist the jury in determining a fact in issue. Safeco does not take issue with Mr. Bent's qualifications as an expert.

## MEMORANDUM OF LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through

---

[1] This docket entry contains a true and correct of Mr. Bent's expert report.

> the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and, while they "remain distinct concepts," "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

Furthermore, in determining the *reliability* of a scientific expert opinion, the Eleventh Circuit considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).

Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib.,*

*LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

### A. Methodology / Reliability

Safeco argues that Mr. Bent's opinions and testimony are inadmissible because they are unsupported by any reliable methodology and fail to rely on a single study, article, or authority as support. "The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

Although specialized knowledge is required, "[r]ule 702 takes a liberal approach to expert witness qualification." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006) (citation omitted). "[A]n expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("Rules 702 and 703 grant all expert witnesses, not just 'scientific' ones, testimonial latitude unavailable

to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.").

As a preliminary matter "[o]pinions of value are a traditional subject of expert testimony, and it is well within the discretion of the district judge to admit them." *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, 10-23869-CIV, 2012 WL 13012778, at *4 (S.D. Fla. May 24, 2012). Even "opinions [that a]re not based on consistent standards, and [a]re subject to factors of taste and assessment of the market," are "not unusual" and are "properly the subject of searching cross-examination." *Id.* Appraisals are more of an art than a science. *Id.* (DE 81-1, 225:10-13)

> Within the valuation context, this Court has noted:
>
>> Although one of the factors considered by courts when determining the reliability of a particular methodology is **whether it has been accepted in the relevant industry**, *see Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786, "[u]nlike more rigid scientific testimony, valuation testimony relies heavily on the expert's knowledge and experience." *CB Aviation, LLC v. Hawker Beechcraft Corp.*, No. 2:10-cv-1411-JD, 2011 WL 5386359, at *6, 2011 U.S. Dist. LEXIS 128918, at *17 (E.D. Pa. Nov. 8, 2011) (regarding expert testimony on the valuation of aircraft) (citing *Simon v. Weissmann*, 301 Fed.Appx. 107, 116 (3d Cir. 2008); *Greenberg v. Paul Revere Life Ins. Co.*, 91 Fed.Appx. 539, 540–41 (9th Cir. 2004)). Because **valuation testimony is the "'kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it**,'" *Greenberg*, 91 Fed.Appx. at 540-41 (quoting *U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)), whether the User Cost Benefit method has been recognized in industry publications or by the industry in other contexts is not dispositive of the admissibility of Dunbar's valuation testimony.

*Id.* (emphasis added); *Welsh v. Newman Intern. Transp., Inc.*, No. 2:10-CV-582-FTM-SPC, 2011 WL 3958452, at *6 (M.D. Fla. Sept. 8, 2011) (finding a valuation expert's methodology admissible where it was "clearly enumerated, allowing Defense experts to model his approach and offer differing conclusions.").

Mr. Bent has been an IACP[2] certified auto appraisers for almost twenty years. (DE 81-1, 209:6-19). Mr. Bent is routinely engaged as an independent auto appraiser by multiple insurance companies (including Safeco) and the United States government (FBI, DEA, and IRS). Mr. Bent overseas over 2,000 certified appraisers through his company Houston Auto Appraisers. Applying the recognized standards in the industry, Mr. Bent prepare an IACP certified appraisal, and opines that the actual cash of the RV on the date of the loss is $519,702.00. *See* DE 81-2.

Safeco states that Mr. Bent's opinion is not premised on "scientific, technical, or other specialized knowledge." In support, Safeco relies on *Banta Properties, Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 WL 7118542 (S.D. Fla. Dec. 23, 2011). In *Banta*, this Court found that the expert's testimony was not reliable because:

> [The expert] took raw data gathered by an uncritical eye, ran it through a spreadsheet, and came to a calculation on which windows and doors were damaged. There is no evidence that Mellinger's technique has been tested or peer reviewed. There is no information on the known or potential rate of error of the technique, nor the existence and maintenance of standards controlling its operation.

*Id.*, at *4 (internal citation omitted).

Here, unlike *Banta*, Mr. Bent's methodology for appraisal has been widely accepted by vehicle appraisers. (DE 81-1 at 170). In this particular case, Mr. Bent appraised the RV in accordance with industry standards, as follows:

> Q. At this point I'm just interested in general as to what your methodology was for determining the value on the date of FBI confiscation of the RV.
>
> A. Well, there's numerous factors that we look at. One. We look at the year, make, model and mileage of the RV and the condition of the RV. And once we can determine year, make and model of the RV and the condition, then we look at the fair market value of what other RVs were on the date of loss, or within that particular time period. And from there we

---

[2] Independent Appraiser Certification Program.

look to see if the RV had any mechanical or warranty issues, stuff like that. I look at the technical service bulletin, I looked at safercar.gov, and we looked at pretty much everything that we needed to see to determine what the value of that particular asset was at the time of confiscation.

Q. When you said you looked to see the fair market value of similar RVs, what was the source of information about what other RVs were selling for that you relied upon?

A. I went to RV Trader. I went to, let me see, I know RV Trader is one. We went to RV Living, I believe. We also visited several Camping World and Camping World dealerships and stuff like that.

***

Q. This entire step by step process and formula that you discussed with us, is that recognized as a standard of appraising RVs or vehicles?

A. That's correct. It's a nationally recognized standard.

Q. And recognized by who?

A. It's recognized by USPAP, and it's also recognized by the Bureau of Certified Auto Appraisers, and it's also recognized by the majority of other auto appraisers, like ASA, which they are another certifying entity just like the Bureau.

(DE 81-1, 115:4–25, 116:1–6; 223:21-25, 224:1-8).

Mr. Bent's methodology has been peer-reviewed and applied by over 3,400 individuals who have paid Mr. Bent for access to documents explaining his methodology. (DE 81-1 at 73:21–25, 74:1–22). Mr. Bent is the owner of the Bureau of Certified Auto Appraisers, which is recognized by the U.S. government under the National Professional Credentialing Organization. (DE 81-1 at 84–85). His methodology is distributed by the Bureau of Certified Auto Appraisers, which administers the Independent Appraiser Certification Program for prospective appraisers. (DE 81-1 at 77–79, 81).

In determining the value of the RV, Mr. Bent used the only appraisal standard that could be used for an RV, which is recognized by the Uniform Standard for Professional Appraisal Practices

("USPAP"), the American Society of Appraisers (a certifying entity), and the Bureau of Certified Auto Appraisers. (DE 81-1, 223:21–25, 224:1–8, 227:2–18). The error rate for the methodology employed by Mr. Bent is approximately three to five percent. (DE 81-1, 225:5–22). Mr. Bent has also outlined his methodology in his IACP certified appraisal report. (DE 81-2, p. 4).

Safeco also relies on *Kumho Tire Co., Ltd.*, 526 U.S. 137 (1999). In *Kumho*, the Court determined that the expert's methodology was not reliable because:

> We have found no indication in the record that other experts in the industry use Carlson's two-factor test or that tire experts such as Carlson normally make the very fine distinctions about, say, the symmetry of comparatively greater shoulder tread wear that were necessary, on Carlson's own theory, to support his conclusions. Nor, despite the prevalence of tire testing, does anyone refer to any articles or papers that validate Carlson's approach.

*Id.*, at 1178.

Unlike the *Kumho* expert, Mr. Bent's methodology has been widely accepted. Mr. Bent has lectured at the University of Houston Law Center on appraisal of vehicles. (DE 81-1 at 211:6–10). Furthermore, his work has been published in the Texas Bar Journal in articles regarding his appraisal techniques. (DE 81-1, 211:13–25, 212:1–7). Moreover, Mr. Bent's methodology is published by USPAP. (DE 81-1, 234:12–22).

Apart from the establishment of a credited appraiser certification entity and numerous publications that explain the valuation methodology, Mr. Bent has been a vehicle appraiser approximately twenty (20) years. (DE 81-1, 209:20–22); *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, 10-23869-CIV, 2012 WL 13012778, at *4 (S.D. Fla. May 24, 2012) ("Because valuation testimony is the 'kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it,' whether the User Cost Benefit method has been recognized in industry publications or by the industry in other contexts is not dispositive of the admissibility of Dunbar's valuation testimony.") (internal citation

omitted). Mr. Bent has also appraised 40-45 RVs in the last five years and has appraised more than a thousand vehicles in his lifetime. (DE 81-1, 30:5–15, 212:8-12).

### B. Helpfulness

Safeco's final argument is that Mr. Bent's opinions will not assist or help the trier of fact. Specifically, Safeco contends that Mr. Bent's opinions are unhelpful because they fail to offer anything beyond the comprehension of a layperson.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262- 63 (citations omitted). While "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre*, 308 F. App'x at 383).

The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Helpfulness of an expert's testimony is a relevance inquiry; the relevance standard is a liberal one. *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016).

However, an expert's conclusion that is based upon a specialized theory that is foreign to the jury is deemed helpful. *Kumho Tire Co., Ltd.,* 526 U.S. at 148–49. Numerous courts have recognized that appraisal is not an exact science, rather it requires judgment by the appraiser. *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998); *Quiet Tech*, 326 F.3d at 1345) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence.") (citing *Daubert*, 509 U.S. at 596).

Here, Mr. Bent has not made any legal conclusions. Mr. Bent's valuation of the RV is premised on a methodology widely accepted within his specialized field. Moreover, the formulaic approach to valuation, which Mr. Bent has published multiple times and applied to numerous vehicles and RVs, would help a jury determine the value of the RV when it was confiscated. (DE 81-1 at 211–12).

In this particular case, Mr. Bent believes that his testimony would be helpful to the jury. At his deposition the following exchange took place:

> Q. If members of the jury did not know about this methodology, would they be able to tell us what the value of an RV would be a year later or years later?
>
> MR. LAPIN: Objection to form.
>
> A. It depends on their experience. If they are experienced buying more than one or two cars, if they have bought ten or 15 cars in their lives, then, yes, they should be able to identify. If they have only purchased one vehicle and it was actually purchased by someone else, it's very possible that they may not know.
>
> Q. Do you feel that your testimony would be helpful to the jury to find out what the actual value of the RV was on the date of the loss?
>
> A. Yes.

(DE 81-1, 226-8-23).

The jury should be allowed to hear about what methodology is acceptable and what value is arrived when applying this methodology. Any issues with Mr. Bent's approach and application of same is suited better for rigorous cross-examination. Safeco has not provided any case law to support its contention that Mr. Bent's testimony would not be helpful to the jury.

WHEREFORE, Eladio Ruiz, respectfully requests that the Court enter an order denying Safeco's motion, together with such other and further relief the Court deems just and proper.

Respectfully Submitted,

**LAW OFFICE OF CHRISTOPHER F. ZACARIAS, P.A.**
*Counsel for Eladio Ruiz*
5757 Blue Lagoon Drive, Suite 230
Miami, Florida 33126
Tel.: (305) 403-2000
Fax: (305) 459-3964

&

**THE LAW OFFICES OF EDDY O. MARBAN**
*Counsel for Eladio Ruiz*
2655 S. LeJeune Road, Suite 804
Coral Gables, Florida 33134
Telephone (305) 448-9292
Facsimile (786) 309-9978

By: */s/ Christopher F. Zacarias*
    Christopher F. Zacarias, Esq.
    Florida Bar No. 85609
    czacarias@zacariaslaw.com
    pleadings@zacariaslaw.com
    Rosendo A. Forns, Esq.
    Florida Bar No. 125391
    Rosendo@zacariaslaw.com
    Edilberto O. Marban, Esq.
    Florida Bar No. 435960
    em@eddymarbanlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 1, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher F. Zacarias*
CHRISTOPHER F. ZACARIAS

## SERVICE LIST

Alejandra Arroyave Lopez, Esq.
**Lapin & Leichtling, LLP**
255 Alhambra Circle Suite 1250
Coral Gables, FL 33134
Telephone: 305-569-4107
Facsimile: 569-0000
alopez@ll-lawfirm.com
*Counsel for Safeco*

Jeffrey Scott Lapin, Esq.
**Lapin & Leichtling, LLP**
255 Alhambra Circle Suite 1250
Coral Gables, FL 33134
Telephone: 305-569-4107
Facsimile: 569-0000
JLapin@LL-Lawfirm.com
*Counsel for Safeco*