# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21036-CV-WILLIAMS/TORRES

ELADIO RUIZ,

      Plaintiff,

v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION TO STRIKE

Presently before the Court is a Motion to Strike Defendant's Deposition Errata Sheet, filed on January 6, 2019 by Plaintiff ELADIO RUIZ ("Plaintiff" or "Ruiz"). [D.E. 51]. Defendant SAFECO INSURANCE COMPANY OF ILLINOIS ("Safeco" or "Defendant") responded in opposition to the Motion on January 15, 2019 [D.E. 55], and Plaintiff's Reply followed on January 22. [D.E. 58]. Having reviewed the Motion, the record before us and the relevant legal authorities governing the dispute, we hereby **ORDER** that Plaintiff's Motion be **GRANTED**.

### *I.  FACTUAL BACKGROUND*

The underlying dispute concerns a recreational vehicle ("RV"), the Federal Bureau of Investigation ("FBI"), and whether the entire transaction giving rise to the Complaint was simply a poorly-executed ruse. Plaintiff originally filed his suit in state court, arguing that he purchased the RV in question in 2017 and secured

coverage with Safeco to insure the vehicle for any loss that might occur during the course of Plaintiff's ownership. [D.E. 1]. Safeco promptly removed the case to federal court on March 19, 2018, *id.*, and asserted its own counterclaim against Plaintiff when it answered the Complaint later that same month. [D.E. 6].

The crux of the matter is this: Ruiz claims that the RV was valued at $500,000.00 at the time the FBI seized the vehicle – which occurred because of alleged criminal acts committed by a previous owner – and now demands that Safeco cover the loss pursuant to the subject insurance policy. [D.E. 1-1]. Safeco refused to do so, arguing that Ruiz: (1) knew, or should have known, that the RV had been stolen by the seller of the vehicle, and therefore cannot be considered an innocent purchaser under the subject policy; and (2) may have participated in a fraudulent scheme to obtain payment from Safeco under the policy, thus securing a windfall despite the fact that no loss actually occurred. *See* generally Counterclaim for Declaratory Relief, D.E. 6.

The Motion before this Court involves Safeco's answers to questions related to the value of the RV. On July 20, 2018, Defendant responded to Plaintiff's propounded discovery on the issue:

> **10. Identify the value of the RV on the date Safeco first insured the RV.**
>
> According to information in the underwriting file, the value of the RV was $500,000 when the policy was issued.
>
> **11. Identify the value of the RV on the date the RV was confiscated.**

> According to information in the underwriting file, the value was $500,000 when the RV was issued and there are no facts of which Safeco is aware to support a change in value as of the date the RV was confiscated.

[D.E. 40-19]. Roughly three months later, on October 15, 2018, Plaintiff deposed Safeco's corporate representative, Mr. Thomas Chiappone. [D.E. 40-2]. Mr. Ruiz's counsel questioned Mr. Chiappone on the RV's value, which led to the following exchange:

> **Q: What is Safeco's position on the value of the RV on the date of the confiscation?**
>
> A: I believe the documents that they have in there show a similar model. … I believe that [it] was around 540-something thousand dollars.
>
> **Q: So would you agree with me that on the date of the confiscation, the RV was worth at least $500,000?**
>
> A: According to the documents I saw, yes.
>
> …
>
> **Q: Understood. But Safeco's position is that [the value of the RV] was at least $500,000 on the date of the confiscation, correct?**
>
> A: What they were looking at from the documents they uploaded, yes, they were able to obtain, yes.
>
> **Q: Do they have anything to refute that it wasn't [valued] at least $500,000?**
>
> A: Not that I'm aware of, no.

[D.E. 40-19, pp. 140-41]. The court reporter's office sent Mr. Chiappone's deposition transcript to Safeco's counsel on October 30, 2018, and there is no dispute that Defendant's lawyer received the copy electronically on that date. [D.E. 51-1; D.E. 55].

3

Discovery closed on November 16, 2018. [D.E. 15]. Armed with Chiappone's testimony, Plaintiff moved for summary judgment on December 18, 2018. [D.E. 44]. Plaintiff argued that he had established a *prima facie* case concerning the coverage issue because the record showed he obtained policy coverage from Safeco prior to the seizure, the seizure occurred while the policy remained in full force and effect, and Safeco admitted that the RV was worth $500,000 at the time the FBI seized the vehicle. *Id*.[1]

Safeco filed its response to Ruiz's Motion on January 2, 2018. [D.E. 48]. In that Response, Safeco argued that it "did not agree the value [of the RV] was $500,000." *Id*., p. 2. Instead, Defendant claimed that Ruiz relied on "ambiguous testimony from Mr. Chiappone" in an attempt to establish the $500,000 value. *Id*. To support this argument, Safeco submitted an errata sheet in conjunction with its Response, which Defendant claimed clarified his answer at the deposition about the RV's value to state "that while there were documents from the internet reflecting a value of at least $500,000, no value had been placed by an expert at the time of loss." *Id*. The errata sheet would now have Mr. Chiappone's testimony read as follows:

> **Q: Understood. But Safeco's position is that [the value of the RV] was at least $500,000 on the date of the confiscation, correct?**
>
> A: Documents reviewed were from an internet search (random). No expert had placed [the] value at the time of confiscation. No value has been placed to date."

---

[1] Ruiz also used Mr. Chiappone's statement about the value of the vehicle to rebut Safeco's contention that it was justified in denying coverage due to alleged misrepresentations made by Plaintiff concerning the RV. [D.E. 44, pp. 3-5].

4

[D.E. 47-2]. The errata sheet was allegedly signed by Mr. Chiappone on December 14, 2018. *Id*. Based on this revision, Safeco now argues that its expert "determined that the RV had *no fair market value* at the time of the FBI's confiscation." [D.E. 48, p. 2-3] (emphasis added). As such, Safeco claims that Plaintiff cannot prevail on summary judgment.

Plaintiff now asks for this Court to strike the errata sheet and the statements contained therein. [D.E. 51]. Ruiz argues that the errata sheet is untimely under Rule 30(e) of the Federal Rules of Civil Procedure, significantly changes Mr. Chiappone's and Safeco's position on the value of the loss, and was submitted solely in an effort to avoid a finding of summary judgment in Plaintiff's favor. *Id*. Defendant responded in opposition, conceding that the errata sheet is untimely but claiming that its late filing occurred as a result of excusable neglect. [D.E. 55]. Safeco also contends that the changes in testimony are permissible under the current state of the law, and asks that the Motion should be denied.[2]

We agree with Plaintiff and are troubled by the curious timing of the filing of the errata sheet. Because we deem its submission as untimely under Rule 30, and because acceptance of Safeco's position on the issue would be unfairly prejudicial to Ruiz at this stage of the proceedings, we will grant the Motion.

---

[2] Defendant also asks that it be given an extension of time to "review deposition transcripts." [D.E. 56]. That Motion is denied for the same reasons discussed here.

## II.  ANALYSIS

Rule 30(e) of the Federal Rules of Civil Procedure governs the dispute before the Court. The Rule states that a deponent "must be allowed 30 days" to "review the transcript" of that person's deposition and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e).

There is no dispute that Safeco filed the errata sheet in an untimely manner. Safeco's counsel received the deposition transcript on October 30, 2018, but Mr. Chiappone did not execute the errata sheet until December 15 – fifteen days after the expiration of the thirty-day review period provided by Rule 30(e). This alone might be sufficient to grant the Motion to Strike. *See Welch v. Mercer Univ.*, 304 F. App'x 834, 838 (11th Cir. 2008) (district court did not abuse its discretion in striking errata sheet filed more than thirty days after the deadline to submit modifications); *Owners Ins. Co. v. White*, 2014 WL 12461045, at *6 (N.D. Ga. Jan. 23, 2014) ("[The deponent] failed to submit his errata sheet within that thirty day window, and defendants did not consent to an extension. Therefore, [the deponent's] errata sheet is untimely and shall be excluded."). But here, we are provided with additional justification to grant the Motion, due in large part to the circumstances surrounding Safeco's submission of the errata sheet.

In our view, the record demonstrates that Safeco sought the changes in Mr. Chiappone's testimony for the sole purpose of disputing the claims made by Plaintiff in his Motion for Summary Judgment, and any claim to the contrary is unavailing.

First, Mr. Chiappone was unequivocal when he testified about the value of the RV at the time the FBI confiscated the vehicle, and he is no neophyte; Chiappone stated he had sat for deposition "dozens of time," and had worked in the insurance industry for over twenty years. [D.E. 40-2, p. 9]. *See Delaware Floral Group, Inc. v. Shaw Rose Nets, LLC*, 2008 WL 11333085, at *7 (S.D. Fla. Dec. 10, 2008) (granting motion to strike errata sheet based in part on the fact that deponent had considerable experience providing testimony and had done so on many occasions prior to submission of errata changes). It is doubtful, in light of this testimony, that he failed to comprehend the importance of his testimony on this issue. *See id*. And there is absolutely nothing in the transcript that indicates or reflects confusion about counsel's line of questioning with regard to the RV's value.

Second, Chiappone's statements mirror answers provided by Safeco during the course of discovery about the value of the loss. *See* Safeco's Answers to Plaintiff's Interrogatories, D.E. 40-19. For a large majority of the case, then, Safeco had clearly taken the position that the RV was valued at approximately $500,000 at the time of the FBI's seizure; it only sought to change this position when it appeared it might serve as a troublesome fact for purposes of summary judgment. *See Margo v. Weiss*, 213 F.3d 55, 61 (2d Cir. 2000) ("There is no reason to distinguish…between an attempt to conjure up a triable issue of fact through the proffer of a late affidavit and an attempt to achieve the same end through the submission of delayed errata sheets[.] … [Neither] will defeat a motion for summary judgment."). We will not

7

condone Defendant's clumsy, *post hoc* attempt to "correct the record" to better suit its needs.

But there is more. Normally, a party's failure to comply with Rule 30(e) can be excused because there are several procedural safeguards in place to protect a party staring down the barrel of an errata sheet.[3] The original testimony may remain part of the record and can be read at trial for impeachment purposes. *See Estate of Duckett v. Cable News Network LLLP*, 2010 WL 11508194, at *2 (M.D. Fla. 2010) (collecting cases). Or the court may reopen a deposition to allow for further cross examination of the deponent concerning the changes in testimony. *Id.*

None of these options are helpful or available to Plaintiff here. At this point, discovery is closed and summary judgment has been fully briefed. Plaintiff relies, in a significant way, on Mr. Chiappone's testimony as to the value of the RV and the importance of that testimony in establishing his entitlement to judgment as a matter of law. *See* D.E. 44. Allowing the revised testimony to remain and ordering Mr. Chiappone to appear for a second deposition to clarify his answers would require the re-opening of discovery *and* force Plaintiff to re-brief summary judgment. And keeping the changed testimony as part of the record, simply because it *might* be useful for impeaching the witness at trial, ignores the fact that we might not even

---

[3] We acknowledge here that there exists a split in authority as to whether a party may make substantive changes to deposition testimony through the use of an errata sheet, as opposed to mere typographical or transcriptional errors. *See e.g. Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530 (S.D. Fla. 2009) (collecting cases). The Eleventh Circuit has not resolved the issue, but whether the change is substantive or not makes no difference here; the Motion would be granted either way based on Defendant's failure to comply with the timing requirements of Rule 30(e).

8

reach that point: Defendant's new position as to the value of the RV could now become outcome-determinative and lead to summary judgment being granted in Safeco's favor, which would render such relief entirely moot.

We are not prepared to jump through hoops because Defendant failed to comply with the requirements of Rule 30, nor should we. To excuse this behavior considering the curious timing of the errata sheet's submission would be unfairly prejudicial to Mr. Ruiz, and so the Motion to Strike should be granted.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Strike is **GRANTED**. Defendant is hereby **ORDERED** to re-submit its Response to Plaintiff's Motion for Summary Judgment within ten (10) days, removing any reference to Mr. Chiappone's changed testimony or the statements contained within the errata sheet.

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of March, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge