UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21036-CV-TORRES

ELADIO RUIZ,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY
OF ILLINOIS,

    Defendant.
_____/

## ORDER ON MOTIONS TO STRIKE TESTIMONY

Two Motions are pending before this Court: (1) a Motion to Strike the Expert Testimony of Roy Bent, Jr., filed by Defendant SAFECO INSURANCE COMPANY OF ILLINOIS ("Safeco" or "Defendant") on February 22, 2019 [D.E. 81]; and (2) a Motion to Strike the Expert Testimony of Thomas Bailey, filed by Plaintiff ELADIO RUIZ ("Ruiz" or "Plaintiff") on April 15, 2019. [D.E. 100]. Both parties claim that each respective expert fails to meet the standard for admission of expert testimony set forth by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). After reviewing the briefing materials, the record evidence before us and the relevant authorities governing the dispute, we will **DENY** Defendant's Motion and **GRANT in part** and **DENY in part** Plaintiff's.

## I.   FACTUAL BACKGROUND

A detailed discussion of the facts underlying Plaintiff's lawsuit is unnecessary for purposes of the two Motions before us. The only relevant issue, based on the arguments raised in those Motions, involves the value of a recreational vehicle ("RV") owned by Ruiz and confiscated by the Federal Bureau of Investigation ("FBI") on August 15, 2017. Both parties intend to introduce evidence from their respective experts, each of whom performed appraisals on the RV in question, to attempt to establish the value at the time the confiscation took place. Roy Bent, Jr., Plaintiff's expert, assessed the RV's value at $519,702.00. [D.E. 81-2, p. 2]. Defendant's expert, Thomas Bailey, determined that the RV lacked any value at the time the FBI's seizure took place.

Both Plaintiff and Defendant attack the opposing party's respective expert's reports, claiming that each cannot satisfy *Daubert*'s requirement that the experts be qualified, reliable, and helpful. In particular, Defendant challenges the methodology employed by Bent and takes aim at the actual testimony to be given, claiming that he will offer nothing more than lay opinion at trial. Plaintiff, in seeking to strike Bailey as an expert, sets forth several arguments challenging his methodology, qualifications, and the alleged impermissible legal conclusions drawn by Bailey.

With this in mind, we now turn to each Motion.

## II.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs. The Rule provides that a

witness, qualified as an expert by special knowledge, skill, experience, training, or education, may testify in the form an opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. District courts are tasked with acting as "gatekeepers" to determine whether to admit an expert's testimony, and such testimony may only be admitted if we first find those opinions to be reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 579).

The Eleventh Circuit requires a district court to look at three factors when evaluating an expert's prospective testimony and in order to satisfy our role as gatekeeper: (1) whether the expert is qualified to competently testify regarding the matters he intends to address; (2) whether the methodology by which the expert reached his conclusions is sufficiently reliable under *Daubert*; and (3) whether the testimony will assist the trier of fact to understand the evidence or determine a fact in issue through the application of scientific, technical, or specialized expertise. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). The Eleventh Circuit refers to these factors as the "qualification," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The party offering the expert witness bears the burden of laying the proper

foundation for the admission of that expert's testimony. *Id.* ("The burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert opinions."). Admissibility must be shown by a preponderance of the evidence. *Allison v. McGahn Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The decision to admit or exclude expert testimony rests within the trial court's discretion, and we enjoy "considerable leeway" in determining the admissibility of the testimony. *Cook v. Sherriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

### III.   ANALYSIS

#### A.   *Plaintiff's Expert – Roy T. Bent, Jr.*

As discussed above, Defendant's main challenge to Mr. Bent's prospective testimony involves the methodology he employed to arrive at his conclusions. Rule 702 requires that "the methodology by which [an] expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1999). The Court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" before deciding "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593-94. The Supreme Court has articulated a non-exhaustive list or relevant factors to consider when a district court assesses an expert's methodology:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the

> known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 593-94; *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)).

We are not, however, limited to this set of factors, and we may employ a flexible assessment of an expert's methodology if the particular case calls for it. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). Indeed, "[w]hether the *Daubert* opinion factors are even pertinent to assessing reliability in a given case will [depend] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1267-68 (11th Cir. 2005) ("The decision in *Kumho Tire* elaborated on the flexible nature of the inquiry.").

This is not a "hard science" case, as the main issues involve Mr. Ruiz's status as a *bona fide* purchaser of the RV and the vehicle's value at the time of the FBI's confiscation. Mr. Bent's conclusions concerning that value involve his application of non-scientific, experience-based principles, which require us to look to "other factors" when examining his methodology. *Frazier*, 387 F.2d at 1262. In admitting or excluding Bent's testimony, we must look beyond whether or not he applied "hard science" to support his conclusions, and instead assess whether he explained how his experience led him to the conclusions reached, why his experience provides a

5

sufficient basis for those conclusions, and how that experience is reliably applied to the facts in this case. *See Ciera Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 662 (S.D. Fla. 2012) (citing *Brown*, 415 F.3d at 1261); *Quevedo v. Iberia, Lineas Aereas de Espana, S.A. Operadora Unipersonal*, 2018 WL 4932097, at *3 (S.D. Fla. Oct. 11, 2018).

Thus, Defendant's argument that Mr. Bent's methodology is not based on "scientific, technical, or otherwise specialized knowledge" rings hollow. The fact that Bent based his testimony on his own experience, and not some scientific method, does not disqualify him as an expert – at least not standing alone. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Nothing in this amendment is intended to suggest that experience alone…may not provide a sufficient foundation for expert testimony. … In certain fields, experience is the predominant, *if not sole*, basis for a great deal of reliable expert testimony.") (emphasis added). And although rulings on admissibility under *Daubert* "inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology," *McCorvey*, 298 F.3d at 1256, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech*, 326 F.3d at 1341.

Here, we are satisfied that Bent's experience allows him to reach the ultimate determination as to the value of the RV, based on the methodology he normally employs in conducting appraisals on similar vehicles. We are also satisfied that Bent sufficiently explained how this experience led him to the conclusions he made in this

case, supported by the facts known to him at the time he reached those conclusions. *Brown*, 415 F.3d at 1261. Accordingly, his opinions should not be excluded. *See United States v. 0.160 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) (finding economist qualified to testify in eminent domain proceeding about market value of property although his valuation method relied upon statistics provided by government agency).

We also do not agree that Bent is offering a lay opinion. *See Frazier*, 387 F.3d at 1262 ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.") (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). As stated above, there is no requirement that Bent apply a scientific formula to calculate the value of the RV for the relevant time period. Although some of these factors he used – as Defendant points out – involved averaging prices for similar RVs using publicly-available information, Bent also analyzed several other factors that could impact the value of the vehicle at the time of the confiscation. These factors, in addition to the compilation of the relevant data and the knowledge of where to look to acquire such information, comfortably allow us to conclude that his opinions fit squarely within the confines of Rule 702.

Accordingly, Defendant's Motion to Strike Mr. Bent as an expert witness is denied.

### B.     *Safeco's Expert - Thomas Bailey*

Plaintiff also challenges the conclusions reached by Defendant's expert,

Thomas Bailey. We will grant in part and deny in part the Motion, as certain conclusions contained in Mr. Bailey's report include impermissible legal conclusions that effectively "command the jury" to reach a certain decision.

As an initial matter, we find Bailey qualified to offer expert testimony on the value of the RV at the time of the loss. As we stated above, while scientific training or education may provide possible means to qualify an expert, "experience in a field may offer another path to expert status." *Houston v. 7-Eleven, Inc.*, 2014 WL 5856891, at *1 (M.D. Fla. Nov. 3, 2014). The "qualification" inquiry for expert testimony is "not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Association, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009).[1]

We will, however, limit Defendant from introducing *all* the opinions included within Bailey's report, as some of those include impermissible legal conclusions. The Eleventh Circuit requires districts courts to be wary of expert testimony that, in effect, instructs the jury to reach a certain conclusion in a given case. *See generally Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal

---

[1] Bailey has over fifty years' experience in industries related to retail value determinations, investigations, and appraisals on RVs and other motor vehicles. He is also a certified appraiser and specializes in estimates and valuations for RVs, aircraft, and marine vehicles. Clearly, he is qualified to opine on the value of the RV over the course of events leading up to the filing of the lawsuit here.

conclusions[.]"). In doing so, we are mindful of the fact that an expert may provide an opinion on an ultimate issue; but the line is drawn at testimony that interferes with the jury's ability to decide the legal implications of the facts as testified by that expert. *See generally Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may testify as to his opinion on an ultimate issue of fact. An expert may not, however, merely tell the jury what result to reach.").

Here, Bailey's report contains legal conclusions about what the jury should decide as to Ruiz's conduct. This is impermissible. *See id.* at 1541 ("A witness…may not testify to the legal implications of conduct; the court must be the jury's only source of law."). Specifically, Mr. Bailey discussed "red flags" present at the time Mr. Ruiz purchased the RV at issue, and states that the steps taken prior to making the purchase "would not meet the test of what a reasonable person would do." [D.E. 100-3, p. 24]. Mr. Bailey is free to discuss the "red flags" he believes Mr. Ruiz should have noticed prior to making his purchase, but he may not tell the jury that Plaintiff was unreasonable. *See Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."). Counsel will be free to argue that Ruiz acted unreasonably; but Bailey's own view of the ultimate outcome the jury should reach is irrelevant and invades the province of the trier-of-fact. *See Harcros Chemicals*, 158 F.3d at 565 ("[T]he trier of fact is entirely

capable of determining whether or not to draw such conclusions without any technical assistance from…[the] experts."); *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1982) ("Our point is that the ultimate issue in such cases can too easily become *whatever an expert witness says it is*, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury.") (emphasis added).

We will also preclude Bailey from stating that the RV at issue was, in fact, stolen. In his report, Bailey ultimately concludes that the RV has *no* value because it *was* stolen, and that Ruiz knew this to be the case. [D.E. 10-3, p. 24] ("That being the case, and *due to the fact that the motor coach was stolen*, had a fraudulent title, and was not legally marketable to the general public, I find there was no legal value to the motor coach on August 15, 2017). His conclusions should be limited to why a stolen RV would have no value and how he would reach such a determination in his role as an appraiser; but he cannot testify that Ruiz knew that the vehicle was stolen, or otherwise discuss the issue as if it were an established fact. In the hypothetical sense, it can certainly be within his expertise to conclude that a stolen RV may have no value when such a theft is discovered; but any discussion about Ruiz's state of mind or knowledge falls outside his role as an expert witness for purposes of Rule 702.

Thus, we will grant Plaintiff's Motion in part. Mr. Bailey may testify as to all conclusions contained within his report, with two exceptions: (1) Safeco cannot use

Bailey to elicit testimony that Ruiz was, in fact, unreasonable in making the purchase giving rise to the Complaint; and (2) Bailey is precluded from testifying that Ruiz had knowledge that the vehicle had been stolen or that this had been a known fact at the time of the FBI's confiscation.

## IV.   CONCLUSION

For the reasons stated herein, we hereby **ORDER** Defendant's Motion be **DENIED** and Plaintiff's Motion be **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of May, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge